UNITED STATES v. MacALPINE.

No. 7971.

Circuit Court of Appeals, Seventh Circuit.

July 21, 1942.

T. I. McKnight, of Chicago, Ill., for appellant.

J. Albert Woll, U. S. Atty., and Lawrence J. Miller, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This appeal is from a judgment, entered March 2, 1942, upon defendant's plea of guilty to an indictment which charged a vi-

olation of Section 338, Title 18, U.S.C.A. Prior to such plea, a demurrer, on the grounds of duplicity, was overruled.

The action of the court below in overruling the demurrer to the indictment is the sole error presented on this appeal. It is the contention of the defendant here, as it was in the court below, that the indictment is duplicitous in that it charges in each count thereof more than one scheme to defraud. On the other hand, it is the Government's contention that only a single scheme is alleged in each count and that what the defendant relies upon as separate schemes are merely different methods by which such scheme was to be effectuated.

The indictment to which the plea of guilty was entered contained fourteen counts in identical form, except that each count alleged separate uses of the mail. We shall therefore consider count one and what is said with reference to it is applicable to all other counts.

Notwithstanding that the count is lengthy, we think it is important, in view of the contention made, that its allegations be set forth in some detail. In connection with the formal recitals, the count alleged that the defendants (the instant appellant and three other persons were named as defendants) devised and intended to devise a certain scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises from a certain class of persons who were the owners of whiskey warehouse receipts, which persons are designated as those intended to be defrauded.

The substance of the scheme as alleged is as follows: That defendants maintained offices in Chicago under the names of the Penfield Company and K. G. Freight Lines, Inc.; that defendants made an agreement with the Lawrence Warehouse Company, of Chicago, to bottle whiskey and deliver to defendants' licensees, C. O. D. and to deduct its charges and distribute the balance to persons designated by defendants; that defendants formed K. G. Freight Lines, Inc., and induced persons to be defrauded to exchange warehouse receipts for stock in this company; that defendants secured names of the holders of whiskey warehouse receipts, such holders having purchased them from the Penfield Company; that the defendants called upon these holders and represented that they had a plan whereby they could get back the money for the original investor in original whiskey warehouse receipts; that defendants represented:

(a) That defendants had a plan whereby said holders of whiskey warehouse receipts would be able to get their money back;

(b) That under this plan defendants would sell to their customers in Chicago the whiskey represented by the warehouse receipts;

(c) That in order to carry out said plan these persons must turn over their receipts to defendants;

(d) That receipt holders would be paid $53.00 per barrel;

(e) That defendants had made an agreement with the Lawrence Warehouse Company, under the terms of which it would bottle whiskey represented by the receipts, deliver the bottled goods to defendants' customers, collect the amount due, deduct its expenses and then remit direct to the former holders of the warehouse receipts the full amount due.

It is then alleged that defendants represented they had acquired a profitable interstate trucking business operating under the name of K. G. Freight Lines, Inc.; that the stock was worth $20.00 a share and would increase to $25.00 a share within a year; that defendants would establish a terminal in Dayton, Ohio; that K. G. Freight Lines, Inc. owned valuable franchises and had sufficient income to pay dividends; that whiskey warehouse receipts could not be sold so that a profit could be realized, but that if the holders would turn them over to defendants in exchange for K. G. Freight Lines, Inc. stock at $20.00 per share, defendants would purchase that stock at $25.00 per share within one year if those persons were not satisfied.

That if owners of warehouse receipts would turn them over, and in addition pay certain sums of money in cash, defendants would sell the whiskey represented by those receipts at a price amounting to $55.00 a barrel and with that money and with the cash receipts would purchase other whiskey warehouse receipts at $35.00 per barrel and return those receipts back to the original owners.

It is then alleged that upon inquiry by the owners of the receipts, defendants would inform them that there had been a decline in the whiskey market and that their whiskey could not be sold for a reasonable price but that improvements in the market

were expected and arrangements for increased sales had been made, and that the owners would eventually be paid in full.

It is further specifically alleged that each of the foregoing representations was known by the defendants to be false and fraudulent and made with the intention of lulling the persons intended to be defrauded into a false sense of security regarding their dealings and transactions with the defendants, and that as a result of the alleged scheme to defraud, defendants did take and convert to their own use and benefit, money obtained from the persons intended to be defrauded. Then follows copy of a letter which the defendants allegedly sent through the United States mail.

Defendant argues that three separate and distinct schemes to defraud are thus alleged. One scheme, it is argued, is that concerning the representations of the defendants to the effect they had made an agreement with a warehouse company for the bottling and distribution of whiskey to licensees designated by the defendants, collect therefor, deduct the necessary expenses and distribute the proceeds to the owners of the receipts; that in order to effectuate this scheme, the persons to be defrauded must turn over their receipts so that the defendants could procure the whiskey represented thereby and deliver it to the warehouse company.

Another distinct scheme is said to be found in the allegations concerning the formation of the K. G. Freight Lines, Inc., the actions of the defendants in inducing the holders of the receipts to exchange them for stock in this company, the false representations by the defendants concerning the prosperity of the business, the value of the stock, personal investments by the defendants, establishment of a terminal in Dayton, Ohio, ownership by defendants of valuable franchises, and the promise of the defendants to repurchase this stock within one year if the purchaser thereof became dissatisfied.

The last distinct scheme as claimed is that concerning representations by the defendants to the effect that if the owners of the warehouse receipts would turn them over to defendants and in addition thereto, pay "certain sums of money in cash," the defendants could sell the whiskey represented by these receipts for the sum of $55.00 per barrel and that with the amount so realized from such sales, together with the sums so paid in cash, purchase other whis-key warehouse receipts at a price of $35.00 per barrel, which latter receipts would then be turned over to the persons intended to be defrauded.

We have reached the conclusion that defendant's contention must be denied. A study of the count leads us to the view that defendant has failed to distinguish the alleged scheme from the alleged means by which the scheme was to be effectuated. The cases are numerous wherein the courts have made this distinction. It is true, of course, that but a single scheme may be charged, but the pleader is not so limited as to the methods and means devised in aid of the scheme. As was said by this court in Worthington v. United States, 64 F.2d 936, 938:

"The existence of several fraudulent ventures, into one of which an unsuspecting victim may be led, does not necessarily multiply the number of schemes to defraud. One possessed of a fraudulent scheme may set numerous traps into one of which he hopes and expects the unwary to walk. * * *"

Recently the principle has been aptly stated in Weiss v. United States, 5 Cir., 122 F.2d 675, 680:

"A single scheme to defraud may involve a multiplicity of ways and means of action and procedure. It may be such that the complete execution of it would involve the commission of more than one criminal offense. Mere details may be changed and the scheme remain the same. As the execution of the scheme (or the intention to devise the scheme) proceeds, new ways may be adopted or invented to effectuate the original design. The important thing is that the scheme, or the intention to devise it, shall remain the same. * * *"

The scheme described and referred to throughout the count was to fraudulently obtain from persons to be defrauded, whiskey warehouse receipts and convert them to the defendant's own use. All that was subsequently done in the accomplishment of this purpose may be properly termed as the methods and means employed. It well may be that at the time the scheme was devised, the schemer had not formulated the plans to be utilized in its execution. Such plans were open to adoption, modification, change or abandonment, as the schemer might conclude would best serve his purpose. Even though the scheme be successfully perpetrated by obtaining the victim's property, it still may be important to the schemer's pur-

pose to adopt methods by which the victim may be lulled into a sense of security, or kept in the dark as to the true situation. Such activities, however, would not constitute a new scheme—they would merely serve in aid of the old. In other words, the methods and means employed to accomplish the object of a scheme to defraud are limited only by the ingenuity of the originator.

In the instant case, it may be well concluded from the allegations that the original method intended to be employed in obtaining the warehouse receipts was through the agreement with the Lawrence Warehouse Company. When this method failed to longer serve defendants' purpose, another method was adopted whereby it was proposed to the owners of warehouse receipts that they take stock in a trucking concern owned and operated by the defendant. Another method was utilized by which, upon surrender of the warehouse receipts, plus a certain amount of cash, defendants would sell the whiskey represented by such receipts at a designated price, the proceeds to be used in the purchase of other warehouse receipts which were to be delivered to the persons to be defrauded.

While these methods were varied to suit the exigencies of the situation as it developed, they all related to and served the purpose of accomplishing the original objective. That was the scheme to obtain the warehouse receipts.

The demurrer to the indictment was properly overruled and the judgment is affirmed.