## UNITED STATES v. EARNHARDT.
### No. 8866.

Circuit Court of Appeals, Seventh Circuit.
Feb. 19, 1946.
Rehearing Denied March 26, 1946.

Walter W. Duft, William McKinley, and Paul E. Price, all of Chicago, Ill., for appellant.

B. Howard Caughran and Paul A. Pfister, U. S. Atty., both of Indianapolis, Ind., for appellee.

Before SPARKS, MAJOR and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

Appellant and another were found guilty by a jury on eleven counts of an indictment charging use of the United States mails in furtherance of a scheme to defraud, in violation of § 215 of the Criminal Code, 18 U.S.C.A. § 338; violation of § 17 of the Securities Act of 1933, 15 U.S.C.A. § 77q; and conspiracy to violate the two statutes. Appellant was sentenced to five years imprisonment and ordered to pay a fine of $1,000.

Two issues are raised by this appeal: Whether the trial judge committed error in (1) overruling appellant's demurrer to the indictment, and (2) in his participation in and conduct of the trial. There was no motion for directed verdict or in arrest of judgment or for new trial, hence there is no question raised here as to the sufficiency of the evidence to sustain the conviction.

Appellant challenges the indictment on the ground that the mailings set forth to support the allegation of the illegal use of the mails all occurred after the alleged scheme had been completed, and were in no way in furtherance of that scheme or its execution. Hence we shall discuss the allegations of the indictment rather than the evidence offered to support the charge.

The indictment charged in substance that appellant caused the incorporation of the Big Bend Realty and Development Company, an Indiana corporation, of which he was president and director. His co-

defendant, one Schneider, was vice-president. These defendants caused Big Bend to acquire large tracts of land in Brewster County, Texas. They then engaged in the sale of parcels of these lands to investors by means of fraudulent representations that the tracts were valuable oil lands and that Big Bend would drill oil wells on land located close to acreage being offered for sale, which drilling would create a "lease-play," a market for leases on those lands. They also promised that defendants would look out for the interests of the investors and would assist them in selling leases for the lands purchased from the corporation at profits in excess of the funds invested; that the investors could rely on the efforts of the defendants to secure a profitable return on their investments; and that the defendants would deliver warranty deeds executed by Big Bend and recorded in the deed records of Brewster County, Texas, conveying the acreage contracted to be sold to them by Big Bend.

The indictment further charged that as a part of the scheme to defraud, defendants had a sectionalized map of Brewster County prepared, showing the location of a number of oil wells falsely represented to be producing oil at that time. Thereafter the defendants had the deeds executed by Big Bend, conveying to the investors the acreage purchased by them, omitting the county and state of residence of the investors, and they had these deeds mailed to the County Clerk of Brewster County with instructions to record and return to Big Bend; after the return of the deeds, the defendants had the county and state of residence of the grantees filled in and then delivered the completed deeds to the investors.

As a further inducement to investors to invest in the Big Bend lands, defendants represented that a great black pool of oil lay under the surface of Brewster County, extending out into the Gulf of Mexico, although, in fact, the geology of the county is such that it is very unfavorable for the production of oil, and defendants knew that there is no such pool, and that the county is a volcanic region not likely to have any oil, and that a total of forty-three oil wells had been drilled, no one of which had ever produced any oil. Defendants also represented that there were producing wells in the county, although they knew that all the wells drilled had been completed as dry holes, and that no oil had ever been produced in the county. They also represented that wells shown on the map exhibited to investors were producing oil, knowing such representations to be false. They also represented that major oil companies were negotiating for leases on the lands owned by Big Bend, and that investors would receive huge profits from such leases, knowing that no such negotiations were under way, either on Big Bend lands or lands being offered for sale to investors. They also represented that Big Bend was only selling alternate sections of its lands, the fact being that it was selling any or all of its lands as fast as it could find buyers, and as soon as it sold its lands, it bought others in the same county for similar sale.

Defendants also falsely represented that the University of Texas had purchased and invested in thousands of acres of land in Brewster County, the fact being, as they knew, that the University had never bought any such lands in the county, and did not own any.

The indictment further charged that it was a further part of the scheme to defraud that if any investors indicated any dissatisfaction in their investments, defendants made further promises calculated to lull them into inaction and postpone possible action on their part in asserting their rights, by promising that Big Bend would buy their lands from them or assist them in selling them at no loss to themselves.

The mailings attached to the various counts relied upon to sustain the allegations of use of the mails to defraud, consisted mainly of letters enclosing deeds either to purchasers, or to the county recorder for recording in Brewster County. Some acknowledged receipt of part of the payments on investments and stated the balance due on account. One replied to an investor who apparently had sent in a clipping regarding the cultivation of guayule, commented on the activity of the Government supposedly relating to it, and discussed the possibility of a trip to the recipient's town.

We agree with the Government that the scheme described was a general and continuing one, the object of which was to reach as many investors as possible, and to defraud them as many times as possible through the sale of practically worthless lands at ten dollars an acre upon false representations, pretenses and promises. That, coupled with the fact that the

474

indictment further charged that defendants sought to allay fears and apprehensions as to the safety of their investments in order to prevent possible action on their part, renders the mailings of the deeds essential steps in the execution of the scheme and not just unrelated events occurring after its completion. This distinguishes the case at bar from Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 157 A.L.R. 406, principally relied upon by appellant to support his contention that the letters clearly show on their face that they had been mailed after the scheme was fully executed and probably could not have had any effect in its execution and furtherance. In the Kann case, the Court, with four justices dissenting, held that where the fraudulent scheme alleged was to obtain money, and the participants had already obtained the money by cashing checks at banks which thereupon became holders in due course, the subsequent mailing of the checks by the banks to the drawees was not for the purpose of executing the scheme within the meaning of the same section as is here involved (18 U.S.C.A. § 338). Cf. United States v. Carruthers, 7 Cir., 152 F.2d 512.

Appellant contends that since the indictment charged that the investors were lulled into a false sense of security by false promises made by the defendants that they would assist investors in selling their lands at no loss, and title to the lands was never in question, the letters containing the deeds could have no bearing on that purpose. We do not agree. Apart from the fact that several letters enclosing deeds also stated balances due on the accounts, obviously indicating that the ultimate purpose of the scheme, to obtain money, had not been completed, we note also the fact that if the lands were to be resold at a profit, deeds proving title were essential, and their delivery to the investors was necessary to the execution of the scheme. Hence we conclude that the ruling of the court in overruling the demurrers to the indictment was correct.

The second issue raised by the appeal relates to the participation of the trial judge in the trial and his conduct of it. The record shows that he did take a very active, and perhaps unnecessary part, both in the direct examination of the witnesses and their cross-examination, there being no indication of any dereliction on the part of counsel prosecuting the case. However, under the facts disclosed by this record, it cannot be said that this unnecessary participation constitutes reversible error. Cf. Simon v. United States, 4 Cir., 123 F.2d 80; United States v. Lee, 7 Cir., 107 F.2d 522; Williams v. United States, 9 Cir., 93 F.2d 685. The evidence introduced to support the allegations of the indictment was more than ample to sustain the conviction—as indicated by the fact that the sufficiency of the evidence was never challenged.

Judgment affirmed.