UNITED STATES v. WERNES.

SAME v. KING.

Nos. 8906, 8907.

Circuit Court of Appeals, Seventh Circuit.

Nov. 15, 1946.

Leonard L Cowan, of Chicago, Ill., and George W. Spenger, of Peoria, Ill., for appellant.

Howard L. Doyle, U. S. Atty., and Marks Alexander, Asst. U.S. Atty., both of Springfield, Ill., and Robert T. Wright, of Chicago, Ill. (Thomas B. Hart, Max Davidson, and Lee Soltow, Attys., Securities and Exchange Commission, all of Chicago, Ill., of counsel), for appellee.

Before SPARKS and KERNER, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

Appellants were convicted on six counts of a ten-count indictment charging them and their attorney with violation of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., and the Mail Fraud Act, 18 U.S. C.A. § 338. The other four counts were dismissed by the Government at the close of its case, and, at the same time, the court directed verdict in favor of the attorney on his motion, and discharged him from further action in the case. King received a sentence of two and a half years' imprisonment, and Wernes, a year and a day.

Appellants' activities which were charged to constitute a violation of the two statutes related to their obtaining of monies for the development and operation of certain oil leases, purchase of equipment, and building of a refinery for use thereon. The leases were on lands within the Crow Indian Reservation in Montana, hence subject at all times to the Department of Interior.

The Government admitted that there was oil underlying the lands leased, and that there were producing wells thereon. It contended, however, that appellants knew that the possibilities of operating the wells and a refinery at a profit in that particular field were extremely doubtful in view of its history, the low grade and value of the oil produced, and the lack of a market nearby or transportation for it, hence, that their representations as to the safety of the venture and its possibilities for profits constituted actionable fraud. Appellants, on the other hand, contended that since the field was proven, as shown by the fact of the producing wells thereon, their expressions of confidence in it as a business venture were not misrepresentations, nor made in bad faith.

In addition to their denial that they were guilty of any misrepresentation or fraud, appellants also asserted that the Statute of Limitations had operated prior to the indictment against any offense they might have committed with reference to their issuance of beneficial certificates in a limited partnership organized by them under the Illinois laws, and the subsequent exchange of these certificates for others in a second company; that the certificates in the second company were not securities within the meaning of the Act, and that the alleged exchange of these for the certificates in the limited partnership did not constitute a sale or exchange for value within the meaning of the Act; that the proof showed two wholly unrelated sets of transactions,

hence that there was a fatal variance between the indictment and the proof; and that appellant Wernes was entitled to immunity by reason of having been compelled to furnish evidence against himself.

As to appellants' defense on the merits, we find clear and convincing evidence to support the verdict of the jury that they were guilty of a scheme to defraud. Representations of large profits and absolute safety in a highly speculative oil venture were backed up by the payment of so-called dividends of 1% a month, stated to have been paid out of earnings from current operations, but in fact, paid out of capital assets of the company as long as those assets lasted. When resources for the payment of these "dividends" were exhausted, the victims were lulled into a false sense of security by representations that "earnings" were being used for the purchase of new equipment, but that the payments would be resumed soon. Appellants stated that they were the sole owners of the leases and promised to turn them over to the limited partnership as their share of the capital assets. They did not disclose that these leases were subject to a very large indebtedness secured by mortgage, and that money collected from investors was used to pay rentals, necessary to avoid cancellation. These and many other serious misrepresentations of fact fully sustain the verdict of guilt.

In setting up the defense of the Statute of Limitations, appellants assert that there was no proof of any sale of a security within three years of the indictment, which was returned June 22, 1944, and that such sales, if any, all took place prior to August 1940, when the last investment was made in the limited partnership, after which time no effort was made by appellants to obtain any further funds from the limited partners, and further, that letters set forth in the indictment to sustain the use of the mails in furtherance of a scheme to defraud, dated from July, 1941 on, were all sent after the scheme, if any, had been fully executed and completed, hence were not in furtherance of it. This contention overlooks the fact, fully discussed by this court in United States v. Riedel, 7 Cir., 126 F.2d 81, that a scheme to defraud may well include later efforts to avoid detection of the fraud. See also United States v. Earnhardt, 7 Cir., 153 F.2d 472; Mitchell v. United States, 10 Cir., 126 F.2d 550, certiorari denied, 316 U.S. 702, 62 S.Ct. 1307, 86 L.Ed. 1771; United States v. MacAlpine, 7 Cir., 129 F.2d 737. There is ample evidence to indicate a continuation of activities designed to prevent too much complaint or inquiry even after attempts to obtain further money from the limited partners had ceased, and the "mailings" fall within this period of continued activity and cannot be said to be not "in furtherance" of the scheme. Hence we find no merit in appellants' contention that prosecution was barred by the Statute of Limitations.

We do not agree with appellants' contention that the certificates offered in exchange for the limited partners' certificates were not securities within the meaning of the Securities Act. It is true that they did not contemplate any new financing or require the payment of any new funds to obtain them. However, section 2 of the Act, 15 U.S.C.A. § 77b, includes in its definition of security, any evidence of indebtedness or certificate of interest or participation in any profit-sharing agreement or investment contract. We think the beneficial trust certificates here involved easily fall within this definition (cf. Securities & Exchange Commission v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88), and that the offer to exchange them for the limited partnership certificates constitutes a sale within the meaning of the same section, under the ruling of this court in United States v. Riedel, supra.

Appellants further contend that the proofs showed two wholly unrelated sets of transactions, one set involving appellants and the limited partners, and the other, an individual, Henry Kuck, and King, and that this variance between the indictment and proofs is fatal. We do not agree. The indictment properly charged, and the evidence fully sustains the charge of a single, integrated scheme to defraud by means of false representations of the value of the leases and the profits to be derived from their development by the drilling of

new wells and the improvement of the old, the use of new equipment to be purchased, the building of a refinery. Money was obtained from some victims by the issuance of certificates of interest in the limited partnership, later exchanged for certificates in another company. It was obtained from Kuck for precisely the same stated purposes in the form of loans to King, evidenced by personal notes and delivery, without assignment, of the leases involved. That the mode of executing the scheme differed between the various victims is immaterial. Weiss v. United States, 5 Cir., 120 F.2d 472, 122 F.2d 675. It remained the same general scheme, a unitary, integrated one in which, the record shows both appellants actively participated.

 In addition to the foregoing defenses, appellant Wernes also contends that his Constitutional rights were violated when he was compelled to produce the books and records of the various organizations, corporate and non-corporate, through which appellants carried on their operations, and not granted immunity from prosecution after producing those records. The record shows that in each of these organizations he was the officer who had legal custody of the books and records, and the subpoena duces tecum required him to produce those books and records. The case of United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 152 A.L.R. 1202, 88 L.Ed. 1542, is a complete answer to his defense of self-crimination. There the Court held that an officer of an unincorporated labor union who had custody of books and records of that union could not refuse to produce those records on the ground that they might tend to incriminate him. Wernes contends that the cases in which the question of privilege has arisen and been denied have been those where the proceedings were investigations against organizations themselves subject to the proceedings involved, and that in no cases have officers, themselves on trial, been forced to produce corporate documents in their custody for use against themselves. The White case, supra, negates this contention. It is quite clear from that case that the only papers and effects which the privilege protects are those which are the private property of the person claiming it, or at least in his possession in a purely personal capacity. Certainly the records here required by the subpoena did not fall within this category. The rule is as stated in Wigmore on Evidence (3rd Ed.), Vol. 8, section 2259b, as corrected in the 1943 Supplement: "Nor can he refuse to produce on the ground that some parts of the corporate records would criminate himself, even if such parts were made by himself; * * *" Hence there was no error in the denial by the court of the motion to quash the subpoena and its refusal to grant immunity to Wernes after his compliance therewith.

 Other errors are asserted by appellants as to certain of the six counts on which they were convicted. We find no merit in any of these contentions and deem it unnecessary to discuss the questions sought to be raised inasmuch as there is no question as to their guilt under the Mail Fraud counts. It is, of course, axiomatic that, where the sentence imposed is one which could have been imposed on each and every count of the indictment, one good count will support a general conviction.

Judgment affirmed.