### CLARK v. UNITED STATES.

### No. 11693.

United States Court of Appeals District of Columbia Circuit.

Argued June 29, 1953.

Decided July 23, 1953.

Writ of Certiorari Denied Oct. 26, 1953. See 74 S.Ct. 105.

Mr. William H. Collins, Washington, D. C., for appellant.

Mr. Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., with whom Mr. Leo A. Rover, U. S. Atty., Mr. William J. Peck, Asst. U. S. Atty., and Mr. Martin J. McNamara, Asst. U. S. Atty., Washington, D. C., at the time the brief was filed, were on the brief, for appellee. Mr. Charles M. Irelan, U. S. Atty., Washington, D. C., at the time the record was filed, and Messrs. William R. Glendon and William E. Kirk, Jr., Asst. U. S. Attys., Washington, D. C., at the time the record was filed, entered appearances for appellee.

Before EDGERTON, PRETTYMAN and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from a judgment of conviction in a criminal case, 108 F.Supp. 388. Appellant was indicted for placing in the mails letters for the purpose of executing a scheme to defraud.[1] The indictment alleged that in 1941 appellant devised a scheme to defraud one Ruth Dixon by falsely pretending that if she would deliver certain money to him he would invest it for her benefit. It further alleged that it was the intention of the appellant at the time not to invest the money but fraudulently to convert it to his own use. The indictment contained four counts relating to four letters mailed in 1950 and 1951.

Upon the trial the proof was that the appellant in 1941 was in the employ of an insurance company. He persuaded Mrs. Dixon to turn over some $3,500 to him upon the understanding that he would deposit it with the insurance company under an investment agreement. He gave her an agreement bearing the forged signature of an authorized signatory of the company. The agreement provided that Mrs. Dixon was to receive semi-annual interest checks. Appellant sent her checks from his own funds. Some difficulty in that respect developed, and finally Mrs. Dixon wrote the appellant that she was going to take the matter up with the company. The four letters which form the subject matter of the indictments followed. They contained explanations and assurances respecting the interest checks.

Appellant says that the prosecution was barred by the statute of limitations,[2] which is three years after the offense shall have been committed. He argues that the specific fraud which was the basis of the indictment was completed in 1941. He says that the letters in 1950 and 1951 could not be "in furtherance of" or, in the language of the statute, "for the purpose of executing" an already completed scheme.

The argument thus made does not actually bear upon the applicability of the statute of limitations. The offense charged is the mailing of the letters, which admittedly occurred within the three-year period. The contention really is that mailing the letters did not constitute an offense under the statute, not being in furtherance of the scheme described in the indictment. The thrust of the argument is the invalidity of the indictment upon its face. The fallacy of this argument is that the scheme described in the indictment was not the bare taking of the money and its conversion to appellant's use. The scheme also included a representation that the money would be invested in Mrs. Dixon's behalf with the insurance company. Such a scheme obviously included an understanding that some return, by way of interest or dividends, would be forthcoming. It encompassed an intention not only to convert the money but also to keep it. Thus any action on the part of appellant which represented efforts on his part to continue the representation that the money was invested, and efforts by him to keep the money, constituted activities "for the purpose of executing such scheme or artifice or attempting so to do". Placing in a post office any matter to be sent or delivered by the Post Office Department for such purpose is an offense under the statute.

Appellant urges that the letters were in fact acts committed by him to hinder or prevent apprehension for the conversion which was completely accomplished in 1941. This contention might have been valid if the scheme or artifice had been merely the conversion. This is the distinction between the case at bar and Kann v. United States,[3] relied on by appellant. Appellant also urges that this case is governed by the doctrine of Krulewitch v. United States.[4] That case disposed of the view, which had been held by some courts, that where there was a

1. 62 Stat. 763 (1948), 18 U.S.C. § 1341.
2. 62 Stat. 828 (1948), 18 U.S.C. § 3282.

3. 1944, 323 U.S. 88, 65 S.Ct. 148, 89 L. Ed. 88.
4. 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L. Ed. 790.

conspiracy to commit an offense there was necessarily present in the conspiracy a further agreement to conceal the violation. We think that doctrine is not applicable here, because the scheme described in the indictment included the representation as to investment as well as the intention to convert.

Numerous cases support our conclusion. Among them are those noted below.[5]

Affirmed.

5. United States v. Wernes, 7 Cir., 1946, 157 F.2d 797; United States v. MacAlpine, 7 Cir., 1942, 129 F.2d 737; Mitchell v. United States, 10 Cir., 1942, 126 F.2d 550, certiorari denied, 1942, 316 U. S. 702, 62 S.Ct. 1307, 86 L.Ed. 1771; United States v. Riedel, 7 Cir., 1942, 126 F.2d 81; Freeman v. United States, 7 Cir., 1917, 244 F. 1, certiorari denied, 1917, 245 U.S. 654, 38 S.Ct. 12, 62 L. Ed. 533; Mitchell v. United States, 9 Cir., 1912, 196 F. 874, certiorari denied, 1912, 226 U.S. 611, 33 S.Ct. 218, 57 L.Ed. 381.