## Commonwealth v. Schwartz

*Richard A. Sprague*, Assistant District Attorney.

*David Kanner* and *Edwin P. Rome*, for defendants.

McDEVITT, P. J., April 14, 1966. — This matter comes before the court on defendants' (Schwartz and Siegel) motion to suppress certain evidence. The motion was made upon the attempt by the Commonwealth to introduce in evidence certain information contained in the records of the Philadelphia Credit Bureau, and is based upon the defense contention that the information sought to be introduced was the fruit of an unlawful search and seizure of certain records of Magistrate Schwartz' Court no. 11. The motion was submitted to the court on the record, and transcript made on similar motions before the Hon. Stanley M. Greenberg, J., as of court of quarter sessions, September term 1965, no. 4608, the additional testimony of John P. Mason, Special Assistant Attorney General, certain documentary evidence, and oral arguments and briefs of counsel.

Defendants also moved, in separate motions, for the suppression of an oral statement in question and answer form given by defendant Schwartz to Special Assistant Attorneys General Arlen Specter and John P. Mason during the investigation of the Magistrates' Courts of the City of Philadelphia.

The evidence sought to be suppressed are certain daybooks or dockets and so-called jackets and their contents, and all the fruits thereof, based upon an asserted invasion of defendants' constitutional rights.

Specifically, the defense relies upon the Fourth Amendment to the United States Constitution, which provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized".

Reliance is also placed upon the Pennsylvania Constitution, article I, sec. 8, which contains a substantially similar provision.

The law is clear that if the Commonwealth obtained any evidence by means of an unreasonable search and seizure, such evidence may not be admitted against the person whose rights have been so invaded: Mapp v. Ohio, 367 U. S. 643 (1960). Defendants contend, in support of their motion to suppress this evidence, that: (1) the entire magisterial probe was illegal and, therefore, any evidence thus obtained is the result of an unreasonable search and seizure; (2) in any event, the jackets alleged to have been seized were the property of Constable Siegel and, therefore, not subject to investigation by the Attorney General or his assistants, and (3) inasmuch as the investigatory team searched the magistrates' records without a search warrant or other court order, in the circumstances, the search was unreasonable.

The first proposition is answered simply. In the prior motion to suppress, argued and prosecuted before Judge Greenberg, the court found that the Attorney General did have a common law right to conduct such an investigation and to supersede the District Attorney. The Supreme Court of this Commonwealth has so held: Commonwealth v. Fudeman, 396 Pa. 236 (1959) ; Commonwealth ex rel. Minerd v. Margiotti, 325 Pa. 17

(1936). Smith v. Gallagher, 408 Pa. 551 (1962), did not overrule these decisions. The majority opinion, in fact, states: "This question is not involved in the present case nor is it raised by anyone": 408 Pa., at page 605. This court is therefore of the opinion that those decisions are binding and must be followed.

Furthermore, as this court views this crucial issue, the question of whether the Attorney General acted properly or not is of no significance.

The Constitutional right to be free from an unreasonable search and seizure is a personal and private right. As with all such rights, it can be waived. "Consent is a waiver of the constitutional protection. Consent therefore makes any product of any search, no matter how unreasonable, admissible in evidence": Sobel, Current Problems in the Law of Search & Seizure 128 (1964). The burden of proving consent or waiver, generally stated, is upon the Commonwealth. Cf. Pekar v. United States, 315 F. 2d 319; Badillo v. Superior Ct., 46 Cal. 2d 269. See Ker v. California, 374 U. S. 23 (1962), which imposes Federal standards upon the states. Assuming such a burden, the evidence clearly discloses, on the part of Magistrate Schwartz, such a voluntary consent to the examination of the books and records of his court. In essence, what appears to have occurred is that Schwartz welcomed the inspection of his court's record and dockets. That being so, he cannot now complain when it appears, in retrospect, that he should have been less free in permitting the examination of the magistrate's court records.

However this may be, under the circumstances of this case, neither Magistrate Schwartz nor Constable Siegel has any basis for complaint. The basic, simple and inescapable conclusion is that we are dealing with official or public records, and not private books of account. A short answer is contained in section 7 of the Magistrates' Court Act of June 15, 1937, P. L.

1743, as amended, which provides in pertinent part, 42 PS §1107:

"Each magistrate shall keep a daybook in which he shall enter all costs, fees, fines, penalties, and other moneys collected by him . . . He shall also note therein the time when, and the manner in which the same [the cases before him] are disposed of, and *the books and papers of said court, including said daybooks, shall be the property of the Commonwealth of Pennsylvania. . . .*" (Italics supplied.)

Magistrate Schwartz now advances the peculiar notion that he is the custodian of what have been called dockets and jackets, and that, therefore, he cannot be compelled to produce them; nor can they be used as evidence against him. And without supporting evidence of any kind, Siegel says that the so-called jackets belong to him (and possibly, may belong to Magistrate Schwartz). Samples of these jackets are in the record before me, and their use and description are clear. They are maintained on a premises, the rental for which is paid by the City of Philadelphia, and which is identified as a magistrate's court in the same city. All of the employes legitimately engaged in work on the premises, such as the clerks and other persons, are paid by the City of Philadelphia. The office of magistrate is created by the Pennsylvania Constitution. The envelopes denominated as jackets contained the suit papers and other miscellaneous matter expected to be found in a court record. Under these circumstances, it would be a perversion of fact and law to conclude that when the Magistrates' Act refers to "books and papers", these jackets and their contents were not included.

Counsel for defendants have asserted, without proof, that Siegel provided the envelopes used by Schwartz as "jackets". It would be wholly immaterial that Siegel had provided the envelopes which were used by Schwartz. This is true because when Schwartz used

these envelopes as an integral part of the books and papers of his office, they became the property of the Commonwealth in the same manner that any papers filed by a party or counsel with the court, which were included as a part of such record, likewise became the property of the Commonwealth of Pennsylvania.

As stated at the outset, since the right to be free from an unreasonable search and seizure is a personal and private right, only that person whose rights have been invaded may be heard to complain. Neither the premises alleged to have been searched nor the books, documents and papers examined belonged to Magistrate Schwartz or Constable Siegel. Schwartz's responsibility, as a public officer, with respect to these records was to ensure that proper entries were made therein, and to keep them safely, *for the benefit of the Commonwealth.* He is in no better position than a private corporate officer charged with responsibility for keeping and maintaining records: Cf. Essgee Company of China v. United States, 262 U. S. 151 (1922) ; Wilson v. United States, 221 U. S. 361 (1910) ; United States v. Werner, 157 F. 2d 797 (7th Cir. 1946). It has specifically been held in the past that the immunity from an unreasonable search and seizure cannot be invoked for papers and documents which are public records, or which are required to be kept by law, as opposed to private documents: Davis v. United States, 328 U. S. 582 (1945). I, therefore, feel confident that my decision in this matter is correct, and the evidence may not be suppressed.

With respect to defendant Schwartz's motion to suppress the statement made to the investigatory team, I am of the opinion that his position is likewise without merit. Prior to the statement having been taken, the mechanics were worked out between Special Assistant Attorney General Arlen Specter, Chief Magistrate Walsh and the solicitor for the board of magis-

trates. Furthermore, Schwartz voluntarily submitted himself for questioning by the investigators. It must be assumed, in the absence of evidence to the contrary, that Magistrate Schwartz was fully aware of his constitutional right to remain silent, and to be represented by counsel. As a member of the minor judiciary, he is charged with the responsibility of protecting the rights of persons accused of crime who may appear before him. He has several years of experience on the bench as a magistrate. There is not the slightest hint or suspicion that he was coerced in any manner or respect in the "interrogation" and, in fact, he was "invited" to respond, but not compelled, by his interrogators.

In addition, and certainly of significance, the record does not support defendants' assertion that the investigation had reached the accusatory stage. The contrary appears to be the case, and I so find as a fact. The investigation had not focused on defendant Harry C. Schwartz at the time when he was interviewed. Therefore, the right to be represented by counsel had not yet arisen. See Escobedo v. Illinois, 378 U. S. 478 (1964); Massiah v. United States, 377 U. S. 201 (1964).

Based upon the record before me, and the foregoing discussion, I make the following conclusions:

First: The investigation of the magistrates' courts in the City of Philadelphia was lawful under existing legal principles;

Second: The records examined were the "daybook" and "books and papers" belonging to the Commonwealth of Pennsylvania;

Third: The records examined, and sought to be introduced in evidence, were the records of official acts of Magistrate's Court no. 11;

Fourth: Magistrate Schwartz acquiesced and consented to the examination of those books and records;

Fifth: Constable Siegel has no personal, proprietary or property interest of any kind whatever in the "day-

book" and "books and papers" of Magistrate's Court no. 11;

Sixth: That all of the "daybooks" and "books and papers" of Magistrate's Court no. 11 are the property of the Commonwealth of Pennsylvania;

Seventh: Magistrate Schwartz voluntarily consented to the interview and transcription of his statement made to the Attorney General's representatives;

Eighth: Magistrate Schwartz, with full knowledge of his legal and constitutional right to remain silent and to be represented by counsel, by his voluntary act, waived any such right he may have had;

Ninth: The interrogation of Magistrate Schwartz occurred during the investigatory, and not the accusatory stage of these proceedings. He, therefore, had no absolute right to be represented by counsel.

### ORDER

And now, April 14, 1966, the motions of defendants Harry C. Schwartz and Abraham Siegel, having been fully argued and presented, are dismissed.