UNITED STATES of America

v.

Anthony Dominic CIOTTI, Appellant in No. 72–1487 et al.

Appeal of Eugene Harlem TRIMBLE, in No. 72–1486.

Nos. 72–1486, 72–1487.

United States Court of Appeals, Third Circuit.

Argued Oct. 20, 1972.

Decided Dec. 4, 1972.

Thomas A. Livingston, Pittsburgh, Pa., for appellant Trimble.

James A. Ashton, Pittsburgh, Pa., for appellant Ciotti.

Thomas A. Bergstrom, Sp. Atty., Philadelphia, Pa., for appellee.

Before STALEY, GIBBONS and JAMES ROSEN,* Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The appellants were sentenced following their conviction on several counts of an indictment charging violations of the mail fraud statute, 18 U.S.C. §§ 1341, 1342, and the conspiracy statute, 18 U.S.C. § 371. They both contend on appeal (1) that the evidence was insufficient to show use of the mails in furtherance of the fraudulent scheme and (2) that evidence was used in the trial which should on fourth amndment grounds have been suppressed. Appellant Trimble contends that the indictment against him should have been dismissed because the Government made a binding promise to that effect in consideration for his testimony against a codefendant. Appellant Ciotti contends that 18 U.S.C. § 371 is unconstitutionally vague.

## SUFFICIENCY OF THE PROOF OF USE OF THE MAILS

■ The fraudulent scheme involved the obtaining of merchandise and lodging through unauthorized use of a stolen credit card. The use of the mails occurred when the forged credit card vouchers were mailed by the innkeeper to the issuer of the credit card for reimbursement. The appellants, relying on Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), contend that because use of the mails occurred after they had received the merchandise and lodging such use took place after the fraudulent scheme had come to fruition. Hence, they say, the mail fraud statute was not violated. In *Parr* three counts of the indictment charged that the petitioners, employees of a school district, had fraudulently obtained gasoline and other filling station products and services for themselves upon the credit card and at the expense of the school district, knowing, or charged with knowledge, that the oil company would use the mails in billing the district for these things. The Court, referring to Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L. Ed. 88 (1944), held that the scheme had reached fruition when the petitioners misused the valid credit card for personal rather than school district purposes. It was immaterial to them how the oil company would collect from the school district. Thus it could not be said that the mailings in question were for the purpose of executing the scheme, as the statute requires. 363 U.S. at 392–393, 80 S.Ct. 1171. The judgments were reversed. Two years after *Parr*, however, in United States v. Sampson, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962), the Court considered an appeal by the Government from the dismissal of a 34 count indictment for mail fraud involving a scheme in which salesmen obtained an "advance fee" from the victim on assurance that the fee would be refunded if the "contract" with the victim was not accepted by the home office. According to the indictment there was never any intention of performing the contract. The mailing of the acceptance took place after the "advance fee" was extracted, and that fee was the sole object of the swindle. The district court dismissed the indictment on the authority of *Parr*, and the Supreme Court reversed. Justice Black wrote:

"We are unable to find anything in either the *Kann* or the *Parr* case which suggests that the Court was laying down an automatic rule that a deliberate, planned use of the mails after the victims' money had been obtained can never be 'for the purpose of executing' the defendants' scheme. Rather the Court found only that under the facts in those cases the schemes had been fully executed before the mails were used. And Court of Appeals decisions rendered both before and after *Kann* have followed the view that subsequent mailings can in some circum-

---

* Judge Rosen participated in the consideration of this case but died before the opinion was filed.

stances provide the basis for an indictment under the mail fraud statutes.[5]

"[5]. See, e. g., United States v. Lowe, 115 F.2d 596 (C.A. 7th Cir. 1940), cert. denied, 311 U.S. 717, 61 S.Ct. 441, 85 L.Ed. 466 (1941); United States v. Riedel, 126 F.2d 81 (C.A. 7th Cir. 1942); Clark v. United States, 93 U.S. App.D.C. 61, 208 F.2d 840, cert. denied, 346 U.S. 865, 74 S.Ct. 105, 98 L.Ed. 376 (1953)."

371 U.S. at 80, 83 S.Ct. at 176.

None of the three court of appeals cases cited by Justice Black involved use of a credit card. But all involved obtaining money before the mailing, knowing that subsequent use of the mails would assist in avoiding detection and preventing prompt recovery. Since *Sampson* every court of appeals case involving credit card schemes similar to that involved in this case has held that such schemes fall within the mail fraud statute. *See* United States v. Kellerman, 431 F.2d 319 (2d Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 356, 27 L. Ed.2d 266 (1970), cert. denied sub nom. Rivezzo v. United States, 401 U.S. 909, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); United States v. Thomas, 429 F.2d 407 (5th Cir. 1970) (per curiam); United States v. Reynolds, 421 F.2d 178 (5th Cir. 1970) (per curiam); United States v. Kelem, 416 F.2d 346 (9th Cir. 1969), cert. denied, 397 U.S. 952, 90 S.Ct. 977, 25 L.Ed.2d 134 (1970); Kloian v. United States, 349 F.2d 291 (5th Cir. 1965), cert. denied, 384 U.S. 913, 86 S.Ct. 1349, 16 L.Ed.2d 365 (1966); Adams v. United States, 312 F.2d 137 (5th Cir. 1963). *See generally*, Annot., Criminal Liability for Unauthorized Use of Credit Card, 24 A.L.R.3d 986, 989–90 (1969). *Cf.* United States v. Gross, 416 F.2d 1205 (8th Cir. 1969), cert. denied, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970) (Check kiting scheme is covered by the mail fraud statute).

*Parr*, although much of the language lends comfort to appellants, is factually distinguishable. The school district employees did have the right to use the credit card for legitimate school district purposes. There was no misrepresentation of identity and no *reliance* on the delay incident to use of the mails to conceal such misrepresentation. The credit card scheme before us involves misrepresentation of identity, and an essential part of the success of the scheme was that such misrepresentation would for a time go undetected because of the delays incident to use of the mails. Thus the case is similar to those cited approvingly by Justice Black in *Sampson*, involving knowing subsequent use of the mails in avoiding detection and preventing recovery. The evidence was plainly sufficient to sustain the conviction on this theory. *Sampson* rather than *Parr* controls.

## THE SUPPRESSION CONTENTION

■ On July 31, 1970 appellants registered at the Hospitality Inn near Pittsburgh, using the names J. C. Chapman of Philadelphia, Pennsylvania and T. Marco of Farrell, Pennsylvania. Appellant Trimble checked out on August 5, using Chapman's stolen credit card to pay for his and appellant Ciotti's stay. Ciotti remained at the Inn. The desk clerk became suspicious and notified the Inn's security officer, Curtis. Curtis checked with the issuer and learned that Chapman's credit card had been stolen. He also learned there was no T. Marco living in Farrell, Pennsylvania. On the basis of this information he obtained an arrest warrant from a Justice of the Peace on charges of defrauding an innkeeper, Pa.Stat.Ann. tit. 18, § 4871 (1963), conspiracy to do an unlawful act, *id.* § 4302, aiding and abetting, *id.* § 4898 and fraudulent use of a credit card, *id.*

On August 8, 1970 Trimble returned to the Hospitality Inn. Curtis, and Mack, an off-duty policeman who was a part-time security officer for the Inn, undertook to execute the warrant. They knocked on the door of the room occupied by Ciotti. They heard a sound similar to that of a gun being cocked, and heard the sliding door at the rear of the

room being opened. Mack rushed to the parking lot where he arrested Trimble, who was carrying a briefcase. He brought Trimble back to the room. Ciotti admitted Curtis to the room. Both appellants were handcuffed. The officers then searched Trimble's briefcase, as well as Ciotti's briefcase, which was in the room. The search of Trimble's briefcase produced several credit cards, including some in the name of Chapman, and a counterfeit Pennsylvania driver's license in Chapman's name. These items were admitted in evidence over the appellants' objection that they should have been suppressed. The district court found that there was reasonable cause for the security officer to secure arrest warrants and that the searches of the briefcases were incident to a lawful arrest. It rejected the contention that after the appellants were handcuffed there was no need to make a warrantless search of the briefcases, finding that the handcuffs would not prevent them from opening the briefcases or of using guns if such were present, as the security officers, from the clicking noise they heard, believed. This ruling was correct. *See* Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685 (1969); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959); United States v. Mehciz, 437 F.2d 145 (9th Cir.), cert. denied, 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971); United States v. Robbins, 424 F.2d 57 (6th Cir. 1970), cert. denied, 402 U.S. 985, 91 S.Ct. 1674, 29 L.Ed.2d 151 (1971).[1]

## TRIMBLE'S BINDING PROMISE CONTENTION

Relying on Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L. Ed.2d 427 (1971), Trimble contends that he was granted de facto immunity and that his prosecution was in violation of that immunity. This contention was the subject of an evidentiary hearing in which it was developed that the Government had offered, prior to his federal indictment, that if he testified before the grand jury and at trial against another participant in the scheme he would be given a clean slate. He agreed to do so, and was apparently indicted at his own request because he did not wish it to appear obvious to his fellow defendants in advance of trial that he would be a government witness. Thereafter he changed his mind. He did not testify at the trial. Indictments against four defendants were dismissed because of his change of mind. At the end of the case he had a second change of mind, and offered to take the stand, but that came at a time when his testimony was no longer useful to the Government. In these circumstances he cannot claim the benefit of a bargain he did not keep. Santobello v. New York, *supra,* is not applicable.

## THE CONSTITUTIONALITY OF 18 U.S.C. § 371

Ciotti's contention that the conspiracy statute is unconstitutionally vague is frivolous.

The judgments of the district court will be affirmed.

---

1. Alternatively the district court suggested that the search was outside the scope of the fourth amendment since it was made by private security officers. *See* Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). We have no occasion to rule on that issue since we have held that the search was incident to a valid arrest. We note, however, that the security officers were executing a state court warrant.