Debra K. VOELKEL, Appellant,

v.

The STATE of Texas, Appellee.

No. 339–82.

Court of Criminal Appeals of Texas, En Banc.

May 14, 1986.

Gilbert D. Smith, Carl E. Mallory, Arlington, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Tom Bellows, J.M. McEntire and Victoria Fay Prescott, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

The trial court revoked appellant's three-year felony probation after it found, at a revocation hearing, that she had unlawfully possessed amphetamine. The order of revocation was affirmed by the Court of Appeals for the Second Supreme Judicial District. See *Voelkel v. State,* 629 S.W.2d 243 (Tex.App.1982—Ft. Worth). We granted appellant's petition for discretionary review in order to examine the Court of Appeals' holding that the search of appellant's belongings which uncovered the illegal con-

traband was valid under the Fourth Amendment.

Appellant checked into the La Quinta Motor Inn in Fort Worth on April 16, 1981, occupying Room 122. On each of the following three days she paid rent in advance for the succeeding day.

Manager Oman Yount testified that between the evening of the 19th and 1:00 p.m. (check-out time) on the 20th, appellant was informed on three occasions that she would have to leave the hotel by check-out time on the 20th. The manager was apparently upset because appellant had parked a Harley-Davidson motorcycle inside of her room (which she moved when requested to do so) and possibly allowed a male companion to stay with her.

At 3:00 p.m. on the 20th, appellant had not vacated the room and, as far as Yount could tell, showed no signs of leaving. Fearing for his safety and following what, according to him, was standard practice, he called the White Settlement Police Department and requested officer assistance in evicting appellant. Officers Helm and Reed responded and went with Yount to appellant's room.

Yount, with Helm and Reed standing behind him, knocked on the door and identified himself. Appellant opened the door three-quarters of the way wide.

Yount and Helm told appellant she would have to leave. Appellant, who appeared to be packing, indicated that she was in the process of vacating the room. She stepped to the right of the doorway and Yount took a step into the room. Helm also took a step inside to insure Yount's safety. Appellant had a guest in the room with her.

From his vantage point inside the door, Helm saw on the dresser a large antique-style scale with, "a pan on each side like a scale of justice." The scale had a drawer or drawers on it and Helm saw syringes inside of an open drawer. He also saw a large pharmaceutical bottle with light-colored tablets in it.

As soon as Helm stepped into the room, appellant reached toward the scale drawer which was thirty-six inches from the door.

Helm told appellant to freeze, and he frisked her. Reed simultaneously frisked the appellant's companion. Nothing was found on appellant, but a gun and what appeared to be marihuana were discovered in the search of the companion.

Appellant and her guest were handcuffed and the officers searched the entire room. The officers searched a plastic clothing bag which was situated on the bed. One of the items in the bag was a cigarette case. Helm opened it and discovered the amphetamine which formed the basis of the State's motion to revoke probation.

Appellant challenged the police entry into the room, her arrest, and the subsequent search.

The Court of Appeals held that: (1) the officers had a right to be in the room to protect the manager; (2) the frisks of appellant and her friend were valid since Helm feared for his safety; (3) the search of the room, including the clothing bag, was a valid search incident to the arrest of appellant and her companion.

Though we do not accept all of its reasoning, we agree with the result reached by the Court of Appeals.

■ It is initially apparent that appellant had a substantially diminished expectation of privacy in Room 122 of the La Quinta Motor Inn by the time Officers Helm and Reed arrived to facilitate her eviction. Beginning on the evening of the 19th, Manager Yount had thrice told appellant she had to be gone by 1:00 p.m. on the 20th. Yet at 3:00 p.m. she was still there, evidencing no particular haste to depart.

Under the circumstances, Yount clearly had a right to enter the room.[1] Since the

---

1. See *United States v. Parizo*, 514 F.2d 52 (2d Cir.1975), where the court stated:

"[W]hen the term of a guest's occupancy of a room expires, the guest loses his exclusive right to privacy in the room. The manager of a motel then has the right to enter the room and may consent to a search of the room and the

officers were present at the invitation of Yount, they also had a right to enter the room. Accordingly, Officer Helm's mere presence in the room did not infringe upon appellant's Fourth Amendment expectation of privacy.

It is also apparent that at this juncture Helm and Reed did not have the sufficient articulable suspicion required under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 10 L.Ed. 889 (1968), to frisk appellant and her companion.

■ From his vantage point inside the room, Helm saw a large antique set of scales, syringes inside an open scale drawer, and a large pharmaceutical bottle containing light colored pills. Appellant reached toward the drawer as Helm entered the room. Helm maintained that he feared for his safety, but aside from this bald statement and his description of the scene he failed to articulate the basis of his fear. Under cross-examination Helm revealed that the scale drawer was ten to twelve inches wide, four to ten inches deep, and one and one-half to two inches high, that is, large enough to hold a gun or some other weapon. But Helm, who was able to see syringes inside the drawer, did not testify to seeing a weapon or that he thought appellant was reaching for a weapon.

Even if Helm had cause to frisk appellant, and assuming his treatment of her did not amount to a full arrest, there was no constitutional warrant for Reed's simultaneous frisk of appellant's companion, who was simply sitting in the room.

Nothing was found on appellant's person, but a gun and a substance that appeared to be marihuana were obtained in the pat-down of the friend.

■ After the frisk of appellant's companion, probable cause existed to search the entire room including the items on the hotel bed. At this point, the police had the following information in their hands:

1. Observation of paraphernalia arranged in such a manner as to suggest possible use of narcotic substances.

2. The paraphernalia was in the open view of appellant.

3. A movement by the appellant that could easily be interpreted as an effort to shut or conceal the contents of the scale drawer. (Helm testified that appellant's hands were touching or almost touching the drawer.)

4. The discovery of marihuana and a gun on appellant's guest.

The finding of the marihuana and gun on appellant's guest, added to the open display of drug-related paraphernalia and appellant's effort to hide, or at least her undisputed effort to reach, some of the paraphernalia, gave the police probable cause to search appellant's belongings.

■ There is nothing in the record directly indicating that the officers thought they had probable cause to search for the exact reasons laid out in this opinion. The mere subjective conclusion of a police officer concerning the existence of probable cause is not binding on this Court which must independently scrutinize the objective facts to determine the existence of probable cause. *Townsley v. State*, 652 S.W.2d 791 (Tex.Cr. App.1983). See also, *United States v. Gray*, 659 F.2d 1296 (5th Cir.1981).

Assuming arguendo that the frisk of appellant's companion (the results of which helped establish probable cause to search appellant's belongings), was improper under the Fourth Amendment, appellant has no standing to complain of this intrusion. *Her* rights were not infringed by it. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).[2] Further, the search of the companion was not *caused* by any infringement of appellant's rights. Probable cause existed for the search of appellant's belongings.

seizure of the items there found." See also *Sumdum v. State*, 612 P.2d 1018 (Alaska 1980).

2. In *Wong Sun*, the defendant Wong Sun complained that his arrest was caused by the illegal search of one Johnny Yee's residence. The Supreme Court acknowledged that the search of Yee's residence was improper, but held that Wong Sun had no standing to challenge it.

The judgment of the Court of Appeals is affirmed.

ONION, P.J., dissents.

CLINTON, Judge, dissenting.

Assuming, without conceding, that the majority is correct that the motel manager, and *ergo* the police officers, had a right to enter appellant's motel room [1] and then to frisk appellant and her companion, that then "[p]robable cause existed for the search of appellant's belongings," as the majority concludes, even if it were correct,[2] would not be the end of the inquiry. Absent some exigency, a warrant is still required. *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); see also *Arkansas v. Sanders,* 442 U.S. 753 at 758, 99 S.Ct. 2586 at 2590, 61 L.Ed.2d 235 at 241 (1979) ("The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment."). For this reason, if no other, I dissent to the majority's disposition.

I also write to address that which we granted discretionary review to examine, and which, without explaining why, the majority apparently did not accept, *viz:* the court of appeals' holding that "the search of the room, including the clothing bag, was a valid search incident to the arrest of the appellant and her companion." See Maj. op. at p. 315.

The court of appeals observed, after concluding that the frisk of appellant and her companion was permissible under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that "when the gun and the marihuana were found on the person of the appellant's companion the appellant and her companion were under arrest." 629 S.W.2d at 246. Presumably because appellant did not expressly attack the *validity* of these arrests, the court of appeals did

not address that question. It is difficult to see the validity of appellant's arrest, however, since the frisk of her person did not reveal possession of either a weapon or contraband. Thus no offense was committed by her in the presence of the police officers. Article 14.01, V.A.C.C.P. But, assuming either that appellant's arrest *was* lawful, or that the arrest of her companion, the lawfulness of which she has no standing to challenge, might under some circumstances justify a search of appellant's belongings, nevertheless on the facts of the instant case the search was unjustified.

In *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), relied upon by the court of appeals, it was stated:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for search-

---

**1.** On the question of whether by overstaying her checkout time appellant had relinquished any reasonable expectation of privacy, see *U.S. v. Owens,* 782 F.2d 146 (CA10 1986).

**2.** On this point I am in general agreement with what is said in Judge Teague's dissenting opinion.

ing through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less."

395 U.S. at 762–763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. Citing *Terry v. Ohio,* supra, then only recently decided, the Court emphasized that the scope of search incident to arrest must be strictly circumscribed in accordance with the events giving rise to the above exigencies, *viz:* the need to seize weapons or secure evidence.

Since *Chimel* the Supreme Court has retreated somewhat from a requirement that any search of the arrestee's person or any area within his immediate control be strictly justified by the circumstances immediately surrounding the arrest. In *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) it was held that a search of the *person* of the arrestee was justified by events giving rise to probable cause to arrest in the first place, and that case by case determination that a weapon or destructible evidence was likely to be present on the arrestee's person is unnecessary. However, as observed in *Chadwick,* supra, "[u]nlike searches of the person [citations omitted], searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectation of privacy caused by the arrest." 433 U.S. at 16, n. 10, 97 S.Ct. 2486, n. 10, 53 L.Ed.2d at 551, n. 10.

Thus we must determine whether the circumstances of the arrests in this cause were such that the officers' need to secure weapons or contraband was sufficient to defeat appellant's legitimate expectation of privacy in the contents of her clothing bag.

It cannot be gainsaid that once a weapon and contraband were discovered in the motel room,[3] the officers had reason to suspect that other such items might be found on the premises. If after arrest appellant

or her companion had ready access to receptacles in the room which might contain these, it would certainly be permissible for the officers to conduct a search of those receptacles, under *Chimel.* Obviously the critical question in this cause is what effect the fact of having been handcuffed and seated at the opposite ends of the room had upon their access to appellant's belongings. Observing that appellant and her companion were cuffed with their hands *in front* of them, the court of appeals concluded that the officers could reasonably expect that the contents of appellant's bag were accessible, citing *United States v. Jones,* 475 F.2d 723 (CA5 1973).

Initially it should be noted that all that is said in *Jones* relative to this question is dicta, having no bearing on the disposition of the case. The Fifth Circuit panel stated that, were it necessary to resolve the cause on the search incident to arrest issue, a remand for additional evidence would be necessary. The panel then found that Jones had *consented* to the search.

Nevertheless, discussing the *Chimel* issue the court opined:

"... Jones was in handcuffs when the agents opened the suitcase. The record is unclear whether his hands were cuffed in front or behind his back and does not reveal the defendant's location in relation to the suitcase at the time of the search. *Both of these facts are relevant to a determination of access to weapons or destructible evidence which is the crucial factor in the Chimel analysis.*

"For example, if defendant's hands were cuffed in front *and he were in close proximity to the suitcase,* then the search here could probably be justified under *Chimel.* Even with the presence of numerous FBI agents in the room, we cannot say that it would be unreasonable to believe that Jones might attempt to lay his hands on a weapon located inside the suitcase. But if defendant's hands were cuffed behind him in such a manner that he was denied access to the suitcase,

---

**3.** The record does not reflect by what justification these items were discovered and seized—

i.e., exactly why Officer Reed engaged appellant's companion in a "flurry of activity."

then the search could not be upheld under *Chimel* because the suitcase would not be within his immediate control or within an area from which he might gain possession of a weapon or destructible evidence."

*Id.,* at 727–728.[4]

At this juncture the court observed in the margin that "[a] situation could develop, of course, in which a defendant with his hands cuffed behind him would nevertheless have access to weapons or evidence."

It is important to note that both the position of an arrestee's cuffed hands *and* his location relative to items searched are to be factored into the decision whether a search for weapons or evidence is necessary. Just as a situation could arise whereby an arrestee handcuffed behind the back might nevertheless have access, it is equally conceivable that handcuffing an arrestee in front would, under a given set of circumstances, sufficiently deny access.

Appellant's clothing bag was located on the bed. There is no evidence that either appellant or her companion made any motion in that direction prior to being subdued. The dimensions of the room are not in evidence, so it is impossible to tell how far away appellant or her companion were from the bed, once cuffed and seated, appellant "in the east corner of the room," and her companion "in the west portion of the room," according to Officer Helm. Helm further testified that appellant was "momentarily" handcuffed *behind* her back, "and then the handcuffs were changed to the front," thus belying any actual concern on the officers' part that appellant might be able to reach a weapon or contraband.

Under this state of the evidence I find insufficient indication that the search of appellant's clothing bag at the scene was justified. Unlike the Fifth Circuit panel, however, I would not remand for additional evidence, since "the general requirement that a search warrant be obtained is not

lightly to be dispensed with and 'the burden is on those seeking [an] exemption [from the requirement] to show the need for it....' *United States v. Jeffers,* 342 U.S. 48, 51, 96 L.Ed. 59, 64, 72 S.Ct. 93 [95]." *Chimel,* 395 U.S. at 762, 89 S.Ct. at 2039, 23 L.Ed.2d at 693.

For the foregoing reasons I respectfully dissent.

MILLER, J., joins.

TEAGUE, Judge, dissenting.

Because the majority erroneously affirms the conviction of Debra K. Voelkel, appellant, I respectfully dissent.

The Fort Worth Court of Appeals affirmed appellant's conviction, see *Voelkel v. State,* 629 S.W.2d 243 (Tex.App.—Ft. Worth 1982), rejecting her main assertion that the warrantless search of her unopened clothing bag that had been on a bed in the motel room she was then in and had been occupying, which bag contained a cigarette case, inside of which was the controlled substance which was the basis of the State's motion to revoke her previously granted probation, was unlawful. The Court of Appeals concluded the following from its rendition of the facts: "In summary, we uphold the search of the room and the seizure of the amphetamine." (246).

The opinion of the Court of Appeals reflects that, in upholding the warrantless search and seizure of appellant's unopened clothing bag, it made the following findings, which I will soon state. After each finding, I will put the legal authority that the Court of Appeals relied upon to support its finding. The findings are as follow: (1) At the request of a motel manager, police officers Helm and Reed of the White Settlement Police Department went to the motel room that appellant was then occupying and had been occupying. The Court held that this request by the manager authorized the subsequent entry made by Helms and Reed. *Stoner v. California,* 376 U.S.

---

**4.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indi-

cated.

483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); (2) because appellant reached toward a dresser after their entry, and Helm testified that this caused him to fear for his safety, this authorized Helm to pat down and frisk appellant as well as authorizing Reed to pat down and frisk her companion. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); (3) because Officer Reed, as a result of his pat down and frisk of appellant's companion, seized a gun that had come from one of the boots appellant's companion was wearing, as well as subsequently finding a small quantity of marihuana in the other boot the companion was wearing, and had placed the companion under arrest, as well as Officer Helm having by then placed appellant under arrest, this authorized both Helm and Reed to conduct a general warrantless search of the motel room, including searching appellant's unopened clothing bag that was on the bed in the motel room, as an incident to the arrests. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); (4) even though appellant and her companion were then both handcuffed and seated, nevertheless, because there was the possibility that either could have obtained a weapon or destroyed evidence, this authorized Helm and Reed to conduct a general warrantless search of the motel room, including the unopened clothing bag on the bed. *Chimel v. California*, supra; *United States v. Jones*, 475 F.2d 723 (5th Cir.1973); *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Ciotti*, 469 F.2d 1204 (3rd Cir. 1972), vacated on other grounds, 414 U.S. 1151, 94 S.Ct. 907, 39 L.Ed.2d 105 (1974).

The majority opinion of this Court affirms the judgment of the Court of Appeals. In doing so, and in sustaining the warrantless search of appellant's unopened clothing bag, it rejects all but the first finding that the Court of Appeals had made in its opinion. See supra. However, the majority opinion does make one negative finding toward appellant, namely: "Assuming arguendo that the frisk of appellant's companion (the results of which helped establish probable cause to search appellant's belongings), was improper under the Fourth Amendment, appellant has no standing to complain of this intrusion. Her rights were not infringed by it. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Further the search of the companion was not caused by any infringement of appellant's rights."

The majority opinion itself contains certain findings, which are as follows:

(1) After Helm and Reed had entered the motel room, neither obtained sufficient articulable suspicion required under *Terry v. Ohio*, supra, to frisk appellant or her companion;

(2) Even though Helm testified that when appellant reached for the drawer he feared for his safety, "aside from this bald statement and his description of the scene he failed to articulate the basis of his fear";

(3) "Helm, who was able to see syringes [1] inside the drawer, did not testify to seeing a weapon or that he thought appellant was reaching for a weapon";

(4) "[T]here was no constitutional warrant for Reed's simultaneous frisk of appellant's companion, who was simply sitting in the room";

Notwithstanding these favorable findings of fact for appellant, the majority opinion nevertheless reaches the following two conclusions: (1) "After the frisk of appellant's companion, probable cause existed to search the entire room including appellant's belongings," and (2) "The finding of the marihuana and gun on appellant's guest, added to the open display of drug-related paraphernalia [sic] [2] and appel-

---

1. Appellant's possession of the syringes was not under the law per se illegal. See Art. 4476–15, Sections 1.02(29), and 4.07, V.A.C.S.

2. As previously observed, see n. 1, supra, possession of syringes is not per se illegal under our law. Nor is it per se illegal to possess a set of scales. Nor is it per se illegal to possess a sealed bottle containing potassium hydroxide tablets. (My footnote.)

lant's effort to hide, at least her undisputed effort to reach some of the paraphernalia,[3] gave the police probable cause to search appellant's belongings which were located on the hotel's [sic] bed."

By what the majority opinion states, it is obvious to me that its main bit of evidence that is used to sustain the warrantless search of appellant's unopened clothing bag are the results of what the pat down and frisk of appellant's companion revealed. Be that as it may, how did this give Helm and Reed authority to conduct a warrantless search of the unopened clothing bag?

The majority opinion, however, informs us that the "collective information" or "collective knowledge" that Officer Helms had, which gave birth to probable cause to conduct a warrantless search of the entire motel room, including appellant's unopened clothing bag, consisted of the following bits of information or knowledge:

"1. [Helm's] [o]bservation of paraphernalia[4] arranged in such a manner as to suggest possible use of narcotic substances.

2. The paraphernalia[5] was in the open view of appellant.

3. A movement by the appellant that could easily be interpreted as an effort to shut or conceal the contents of the scale drawer. (Helm testified that appellant's hands were touching or almost touching the drawer.)

4. The discovery of marihuana and a gun on appellant's guest."

The majority then states and concludes: "The finding of the marihuana and gun on appellant's guest, added to the open display of drug-related paraphernalia [sic] and appellant's effort to hide, or at least her undisputed effort to reach some of the paraphernalia, gave the police probable cause to search appellant's belongings

which were located on the hotel's [sic] bed."

Although the majority, in singling out facts which it uses to support its conclusion that the warrantless search and seizure of the unopened clothing bag was lawful, does not erroneously state the facts, nevertheless, because of the manner in which it has treated and set out those facts in its opinion, I believe it leaves the reader with the wrong impression of what actually transpired inside the motel room after Helm, Reed, and the motel manager made their entry. In particular, its treatment of the facts in the sequence in which they occurred leaves much to be desired. Also, the manner in which it uses the word "paraphernalia" leaves the impression that the syringes, the set of scales, and the bottle of tablets were each per se illegal when in fact none of these items was per se illegal.

Because of how the majority opinion mistreats the facts of what transpired inside of the motel room, which is similar to how the opinion of the Court of Appeals also mistreated the facts of the case, I shall detail the facts in the sequence in which they occurred.

The evidence reflects that on April 16, 1981, after appellant had paid a check-in clerk of the La Quinta Motor Inn located in Ft. Worth the rental fee for one day, she was assigned room number 122.

On April 17th, the day after appellant had rented the room, she again paid in advance to stay another day.

The manager testified that on April 17th he learned from someone that appellant was keeping her motorcycle inside the room she had rented.[6] Thereafter, he went to the room and admonished appellant about keeping the motorcycle inside the room because he believed that such might constitute a violation of the Ft. Worth Municipal Fire Code.

---

3. See notes 1 and 2, supra.

4. See notes 1 and 2, supra. (My footnote.)

5. See notes 1 and 2, supra. (My footnote.)

6. The motorcycle was described as a Harley-Davidson, black in color, with extensive chrome and flames painted on the side of the gasoline tank. It had an extended front portion and a "sissy" bar. In common parlance, the motorcycle was referred to as "a Chopper" or "a Hog."

The record reflects that within twenty minutes after the manager had admonished appellant, she removed the motorcycle from the room to an outside location, "under a stairwell." The record does not reflect or indicate that afterwards she ever attempted to or did put the motorcycle back inside of the room.[7]

On April 18th, after the 1:00 o'clock p.m. check out time had passed, appellant again paid to stay another day.

On April 19th, the manager told a clerk to advise "them"[8] that the room would not be available after the 1:00 o'clock p.m. checkout time on April 20th. The manager testified that appellant "had been informed twice, three times [that she had to vacate the room by that time]."

On April 20th, after checkout time had passed, and after learning that appellant had not checked out of the motel, the manager contacted the White Settlement Police Department, "for assistance." The manager testified: "I was going down, myself, but when the tenant is advised [after that many times to leave], I always have an officer with me."

However, Officer Helm, who with Officer Reed responded to the call, testified that to his knowledge officers of the White Settlement Police Department had never in the past responded to such a call. Nevertheless, the two of them responded to the call on this occasion.

After Helm and Reed arrived at the motel, Helm and the manager thereafter went to the outside of the room appellant had previously rented. Reed met them at that location. The manager knocked on the door of the room, to which appellant responded by opening the door.[9] The manager testified that when appellant opened the door he could then see through the opening not only appellant but also a male person.[10] He also testified that from what he observed through the opening, appellant appeared to be preparing to vacate the room: "It appeared to be, because she had stuff laying on the—There was baggage laying on the bed."

After appellant opened the door, the manager, in no uncertain terms, told her "that it was past check-out time and the room was not available and she would have to vacate it." Helm also told appellant "that [she] would have to pack her stuff and leave." Appellant replied to both the manager and Helm that "she was packing and getting out as fast as she could." Helm testified that he had no reason to disbelieve appellant's statement.

With Officer Reed securing the outside of the motel room, in the words of the manager, Helm "stepped by [the manager, who was barely inside of the room, and went inside the room] and [Reed] stepped to the edge of the door and at that time, Officer Helm had told the young lady that he saw something on the dresser; saw her put something there or close something, I don't know which, but he had told her to step back and freeze, and when he did, I stepped out of the room."

Helm testified that after he had entered the room, and after he had told appellant "to pack up and begin moving out," appellant then reached toward the dresser to get a set of scales that was on top of the dresser. The record also indicates that when appellant reached toward the dresser she may have been trying to keep Helm

---

7. The manager, however, testified that the motorcycle was "one of the things" that caused him to order appellant to vacate the room. See post.

8. The record does not reflect, except when appellant was in the process of vacating the room, see post, that anyone else ever occupied the room with her.

9. When appellant opened the door, she was wearing blue jeans with a motorcycle chain belt. She also was wearing a black colored pullover shirt, which had the lettering "Fuck Off," which

is usually not seen in public. The record reflects that appellant wore a pink dress to the hearing on the State's motion to revoke.

10. Appellant testified that the male person was there to assist her in moving from the room. The record does not expressly reflect that appellant ever had any male visitors in the room during her stay. As previously noted, the record does not reflect that anyone other than appellant occupied the room.

from seeing what was inside of the bottom drawer of the scales.

Helm explained why he told appellant to freeze: "At this time, and from my vantage point, I could also, at an angle, see syringes in the drawer [of the scales]. At this point, I told the lady to freeze and not move." The record reflects or indicates that she did both.

Helm also testified that the scales had "a pan on each side like a scale of justice," and appeared to him to be "antique scales." The syringes that were inside of the drawer of the scales appeared to him to be "new, unused." Helm also observed on the dresser "a large pharmaceutical type bottle [which was unopened and had a red seal on it]." The bottle contained white tablets, and was labeled "potassium hydroxide." The record does not reflect or indicate that any type field or laboratory tests were ever conducted on the scales, the syringes, or the tablets that were in the bottle.[11]

After Helm had told appellant "to freeze," see supra, he then handcuffed her from behind her back, and caused her to stand against a wall of the motel room. At that time, Helm patted down the outside of appellant's clothing, "for weapons." Apparently satisfied that appellant no longer posed a danger to his safety, or the safety of Reed or the manager, Helm then unhandcuffed appellant. However, he then handcuffed her hands from the front, and had her sit in a chair in the room.

Helm further testified that when he was patting down the outside of appellant's clothing, a "flurry of activity" occurred to the right of his back. When he looked to see what was happening, he saw that "Reed had the [male person] against the wall—had thrown the subject against the wall, removed a .38 caliber pistol from his boot,[12] thrown [the pistol] against the wall

and was in the process of securing the subject." Because Reed did not testify, and Helm was not asked when he testified, the record is silent as to what initiated the "flurry of activity" between Reed and the male person. Helm testified that Reed handcuffed appellant's companion and had him sit in another chair.

Helm and Reed then conducted a "cursory search of the room, [and seized a cigarette case from inside of appellant's clothing bag which had been on the bed]." The amphetamine which was the basis of the State's motion to revoke appellant's probation was found inside of the cigarette case.

If one compares how the majority has singled out certain facts of the case with the facts as they were actually developed in the trial court, see supra, it should be obvious to any student of the law that the majority is implicitly relying in part upon some type of "plain view" doctrine to support its holding that probable cause existed to conduct a warrantless search and seizure of appellant's unopened clothing bag. In this regard, observe for example the first two bits of information the majority uses in its collective order of things. The majority opinion states that after Reed frisked appellant's male companion, "the police had the following information in their hands: 1. Observation of paraphernalia arranged in such a manner as to suggest the possible use of narcotic substances. 2. The paraphernalia was in the open view of appellant."

It appears to me that these two bits of information are set out in the opinion in such fashion to attempt to leave the reader with the impression that not only were the items each per se illegal, when they were not, but further that they could have been used in some manner to "inject, ingest, inhale, or otherwise introduce into the hu-

---

**11.** The question whether a field test of a white powdery substance contained in a transparent plastic bag that had been seized upon probable cause constitutes a violation of the Fourth Amendment proscription of warrantless searches has not yet been answered. See, however, *United States v. Jacobsen,* 683 F.2d 296 (8th Cir.1981), judgment reversed 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85.

I again point out that it was not per se unlawful for appellant to have had possession of any of these items.

**12.** Marihuana was found in the male person's other boot.

man body a controlled substance in violation of [the Controlled Substances Act]," when there is no evidence to establish this. See notes 1 and 2, supra.

In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), also see *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), and *Illinois v. Andreas*, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983), the Supreme Court of the United States pointed out that one of the requirements that must be satisfied before the plain view doctrine may be invoked and applied to a case is the fact that the incriminating nature of the articles seized must be readily or immediately apparent. In *Texas v. Brown*, supra, the Supreme Court informed the world what it had meant when it had previously used the phrase "immediately apparent," by stating that probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." Also see Vol. 10, *Search and Seizure Law Report*, No. 10, November, 1983. "The plain View Exception to the Fourth Amendment."

In this instance however, it was not per se unlawful for appellant to have had possession of either the scales of justice, the syringes, or the pharmaceutical type bottle which was unopened, or its contents which contained potassium hydroxide tablets, which were not proscribed by the Controlled Substances Act. Also see Art. 4476–15, Sections 1.02(29) and 4.07(a), V.A.C.S. Furthermore, and as previously pointed out, the record does not reflect or indicate that any type field or laboratory tests were ever conducted on the scales, the syringes, or the tablets that were in the bottle. I have diligently searched the record to find what happened to the above items of property, but the record only reflects that the items were taken to the White Settlement Police Department and deposited there. The record does not indicate what happened to the items after they were deposited in the police department.

From the above, and in light of the fact that none of the above items Helm saw were per se illegal, I am unable to understand how the majority's first two bits of "collective information" or "collective knowledge," see supra, can be used to find probable cause to conduct a warrantless search of appellant's unopened clothing bag.

It should thus be apparent that the "paraphernalia" Helm saw in plain view gave rise to only a vague suspicion. Of course, it is axiomatic that a vague suspicion cannot be "transformed into probable cause ... by reason of ambiguous conduct ..." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Thus, what the majority has tagged as "paraphernalia" could have done no more than raise Helm's suspicion that what he saw was illegal. Of course, this might have given him cause to further investigate, see *Terry v. Ohio*, supra, to make the determination if any of these items were in fact illegal, but the record is clear that he did not undertake to investigate; instead, he undertook to make a warrantless arrest of appellant and a warrantless search of the motel room.

The majority also asserts that certain "movement" by appellant should be added to the above two bits of information. But, in context with the facts as they were adduced, I am unable to understand how appellant's reaching toward the dresser was legal justification for anything, much less for Helm to formally arrest her. Especially is this true when one considers the fact that appellant's act of reaching was probably caused when either Helm or the motel manager commanded her to immediately vacate the room. When a police officer commands a person to "pack [his] stuff and leave [his motel room]," and such person commences to carry into execution that command, pray tell, how can the act of the

"packing" party, in reaching to get his personal belongings, ever constitute part of the "collective information" or "collective knowledge" that might lead one to the conclusion that probable cause to search his unopened belongings has been established. Also see *Wong Sun v. United States*, supra.

Unquestionably, the act of appellant was not only ambiguous conduct, but was as consistent with innocent activity as with criminal activity, and in fact was no ground for suspicion whatsoever. However, ambiguous gestures made under the circumstances of this case cannot ever supply probable cause to conduct a general warrantless search of a motel room and everything else therein. E.g., *Glass v. State*, 681 S.W.2d 599, 602 (Tex.Cr.App.1984), 1 *Texas Criminal Practice Guide Section* 32.04[2].

The majority says that the last bit of information necessary to establish probable cause to search appellant's clothing bag without a warrant was "The finding of the marihuana and gun on appellant's guest." As previously pointed out, the gun came from one of the boots appellant's companion was wearing and the marihuana came from the other boot. Both resulted from the "flurry of activity" that occurred between Reed and appellant's companion.

Because Reed did not testify and Helm was not asked, we are not privy to what initiated or caused the "flurry of activity" that occurred between Reed and appellant's companion. Even conceding that appellant had no "standing" to object to whatever transpired between Reed and her companion, the seizure of the gun that came from one of the boots of the companion, as well as the search and seizure of the other boot that resulted in the finding of marihuana, nevertheless, I am at a loss how this bit of information can be used to establish probable cause that would have authorized Helm and Reed to conduct a warrantless search and seizure of appellant's unopened clothing bag.

Clearly, whatever justification Reed might have had to arrest appellant's companion, and to seize the gun that came from one of the companion's boots, and to search the other boot, such did not authorize either Helm or Reed to conduct without a warrant a general exploratory search of the motel room, and in particular to search and seize appellant's unopened clothing bag. Such a search of the clothing bag clearly exceeded the permissible scope of a search incident to the arrest of appellant's companion. *Coolidge v. New Hampshire*, supra. I must ask: Where in this record has there been demonstrated any exigent circumstances that would have warranted Helm and Reed conducting a warrantless search of the unopened clothing bag? Compare *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Texas v. White*, supra.

The general rule is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment and Art. I, Section 10, Texas Constitution—subject only to a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Coolidge v. New Hampshire*, supra. One of those exceptions is exigent circumstances. *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). However, the mere fact that probable cause exists will not obviate the necessity for procuring a warrant, unless the search falls within one of the exceptions to the general rule. "Belief, however well founded, that an article sought is concealed in a [place], furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause." *Agnello v. United States*, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145 (1925). Also see *Coolidge v. New Hampshire*, supra. But, in this instance, neither Helm nor Reed had

either probable cause as that term is ordinarily defined or any other kind of cause to believe that the unopened clothing bag contained any illegal subject matter.

Furthermore, there is absolutely nothing in this record that would reflect or indicate any suspicious activity by either appellant or her male companion that related to the unopened clothing bag that was on the bed in the motel room. It is axiomatic that the Fourth Amendment and Art. I, Section 9, Texas Constitution, either originated or were motivated to be enacted into the respective Bill of Rights by the framers' hatred for general searches and seizures conducted pursuant to colonial writs of assistance and English general warrants. The warrantless search of appellant's unopened clothing bag suffers from the same infirmity that caused the respective Bill of Rights to be enacted—abuses by the law enforcement establishment. However, in this instance, we don't even have a judicially approved piece of paper authorizing any kind of search and seizure.

It should be obvious to anyone that, either singularly or combined, the bits of information that the majority opinion accumulates to establish probable cause are insufficient to establish probable cause that would have authorized Helm and Reed conducting a warrantless search of appellant's unopened clothing bag.

What I find the majority actually accomplishes by its holding is that it is approving a dragnet search of a motel room and in particular an unlawful search of an unopened clothing bag found in the motel room. However, the Supreme Court of the United States, as well as this Court, has in the past condemned dragnet searches of persons on several occasions. *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *Lippert v. State*, 664 S.W.2d 712 (Tex.Cr.App.1984).

Neither probable cause nor exigent circumstances have been established in this cause that would have justified the warrantless search and seizure by Helm and Reed of appellant's unopened clothing bag. The search should have been suppressed by the trial court. The majority of this Court errs in holding that Helm and Reed had the lawful right to conduct a warrantless search of appellant's unopened clothing bag.

I respectfully dissent to such holding.

MILLER, J., joins.