# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00160-CR

---

**The State of Texas, Appellant**

**v.**

**Robert Brandon Minatra, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
### NO. 2018CR0338, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The State of Texas appeals the trial court's order granting a motion to suppress evidence filed by Robert Brandon Minatra, who was charged with the offense of interference with a public servant. *See* Tex. Code Crim. Proc. art. 44.01(a)(5); Tex. Penal Code § 38.15(a)(1). Minatra argued that the charge was based on an illegal entry by police into a hotel room to arrest him. The State contends that the trial court abused its discretion by granting the motion to suppress and alternatively, that additional findings of fact and conclusions of law are necessary. We will reverse the trial court's order and remand this cause for further proceedings consistent with this opinion.

## BACKGROUND

During the February 4, 2020 suppression hearing, the trial court heard evidence that a hotel manager and the spouse of a guest[1] at the Howard Johnson hotel in New Braunfels called police with complaints about the behavior of another guest, later identified as Minatra. A former front-desk clerk, Debra Lynn Smith, testified that during her 3:00 p.m. to 11:00 p.m. shift at the hotel on November 13, 2017, she saw a "disrespectful" and "obnoxious" hotel guest who "had been drinking" and looked like Minatra. Smith further testified that "my managers live upstairs and watch the cameras" and that one of the hotel managers called police that night. Smith denied receiving guests' complaints or calling police herself. She also denied knowing whether the hotel had a written policy on evictions, but she stated that a hotel guest could be evicted for "bothering the other guests."

Sergeant Jeff Meier and Officer Matthew Burdick, both of the New Braunfels Police Department, responded to the scene. Sergeant Meier arrived at 11:56 p.m., and Officer Burdick arrived shortly after midnight. Sergeant Meier's body mic and dash cam recording from his patrol vehicle was admitted into evidence.[2] He entered the hotel lobby and greeted a woman at the front desk.[3] On the recording—over the hotel phone ringing—the woman told Sergeant Meier that "the customer in 213," is "drunk," and is "disturbing his neighbors," and "they've

---

[1] The spouse explained that she called on her husband's behalf because of her greater proficiency with speaking English.

[2] The video camera from Sergeant Meier's parked patrol car remained pointed toward a corner of the hotel, showing the exterior entrance and windows of the lobby.

[3] The woman at the front desk was not Smith, whose shift ended at 11:00 p.m.

been calling." She then said, "This is the key." Sergeant Meier asked if it was the key "to 213," and she agreed before stopping the conversation to answer a phone call from a hotel guest.

Then a man who identified himself as hotel manager Amish Patel greeted Sergeant Meier and spoke with him. Patel identified Minatra as a hotel guest who drank too much, woke up other customers, and started "calling over here" and arguing. Patel said that he moved four customers to other rooms because of Minatra's behavior. Sergeant Meier asked if Patel wanted Minatra "kicked out" of the hotel, and Patel said, "Yeah," noting that he had already received multiple complaints. Patel reported that Minatra was the only guest in room 213 and was staying for just one night. Patel then gave the police a room key.[4]

Sergeant Meier and Officer Burdick went upstairs to Minatra's hotel room. Sergeant Meier knocked on the door with his fist and then with a metal flashlight, announced his presence as police, asked Minatra to open the door, and said that they needed to talk. There was no response, but Sergeant Meier heard what sounded like furniture being moved behind the door.

Using the key card provided by the hotel staff, Sergeant Meier unlocked the door, which opened only partially because the chain lock was engaged. Sergeant Meier saw Minatra, who appeared intoxicated "[b]ased upon the smell of intoxicants on his breath" and his "bloodshot, watery eyes." He told Minatra that "management want[ed] him gone." Sergeant Meier testified that he "was giving [Minatra] notice to leave the premises" but that "[Minatra] wanted to talk over me and try to argue."

Sergeant Meier repeated to Minatra, "Management does not want you here." Sergeant Meier said that he would close the door and that Minatra should unlock the chain lock

---

[4] The recording does not reflect whether this was the same key that the woman at the front desk offered Sergeant Meier earlier.

and open the door. After waiting "a lot longer than it would [take] to normally remove a chain from the door," Sergeant Meier used the key card to open the door a second time. This time, he found that Minatra had wrapped the electrical cord from an iron around the door handle and the sink faucet to prevent entry. When Sergeant Meier asked Minatra to take it off the door, Minatra replied, "You figure it out." Sergeant Meier denied that Minatra ever gave any indication that he was going to leave after receiving notice that management did not want him there. Leaning into the door to break the electrical cord, Sergeant Meier entered the room and arrested Minatra for "interference with public duties." Officer Burdick's testimony at the suppression hearing provided a similar account of the events leading to Minatra's arrest. Minatra testified briefly as to his understanding that the key card he received entitled him to privacy in his hotel room for the evening.

After the evidence closed and counsel concluded their arguments, the trial court noted that this Court ruled for a defendant in a case that discussed "pretty much everything we have talked about today," although the trial court also noted that the Court of Criminal Appeals had granted a petition for discretionary review. *See generally Tilghman v. State*, 576 S.W.3d 449 (Tex. App.—Austin 2019), *rev'd*, 624 S.W.3d 801 (Tex. Crim. App. 2021). The trial court stated, "Under that case I think I have to grant the Motion to Suppress." A written order issued reflecting that ruling.

The State filed its notice of appeal and requested that the trial court make findings of fact and conclusions of law. The State then moved to abate this appeal for entry of those findings and conclusions and later sought additional findings and conclusions. *See State v. Minatra*, No. 03-20-00160-CR, 2020 Tex. App. LEXIS 4627, at *1 (Tex. App.—Austin June 23, 2020, order); *State v. Minatra*, No. 03-20-00160-CR, 2020 Tex. App. LEXIS 3317, at

4

*2 (Tex. App.—Austin Apr. 21, 2020, order). On remand, the trial court made its initial findings of fact and conclusions of law, followed by its additional findings and conclusions.

Minatra relies on a subset of the trial court's fact findings in support of his appellate arguments:

**Findings of Fact**

- The parties stipulated that it was a warrantless arrest.

- A person contacted 911 about a guest being disruptive to other guests at the hotel. The person who called 911 was not staying at the hotel.

- Ms. Smith was not aware of a hotel policy regarding notice of termination and eviction of hotel guests and did not review one, if it existed, with guests.

- Upon their arrival, Officers asked Mr. Patel if he wanted Mr. Minatra removed, and Mr. Patel agreed with the suggestion of the Officers. Mr. Patel did not request law enforcement assistance to evict Mr. Minatra until after eviction was suggested by the Officers. No other hotel employee requested Mr. Minatra be evicted prior to the suggestion by law enforcement.

- Officer Meier was provided a key to Room 213 by an employee of the hotel.

- Upon approaching the hallway and door to room 213, there was no disturbance and the area was quiet. No further action was taken by a hotel employee until after Mr. Minatra was arrested.

- Officers knocked on the door to room 213 and asked Mr. Minatra to "open up" the door and identified themselves as law enforcement. The Officers announced that they needed to talk with Mr. Minatra.

- Officer Meier utilized the room key that had been given to him to make entry into Mr. Minatra's hotel room. After opening the door, Officers found the door chain to be engaged behind the door.

- Officer Meier stated to Mr. Minatra "Open up . . . here's the deal, management doesn't want you here anymore."

5

- There was no credible evidence that a crime had been committed by Mr. Minatra at the time law enforcement sought to evict Mr. Minatra, nor when they forcefully opened his door.

- Law enforcement took no steps to ascertain the terms of the cont[r]act for stay between Mr. Minatra and the Howard Johnson hotel, and the contract was not offered into evidence.

- Prior to the officer arriving at the room occupied by the Defendant, there had been no attempt to give notice of termination of the Defendant's right to remain in the hotel room by the hotel staff.

- Prior to the officer arriving at the room occupied by the Defendant, there had been no attempted eviction of the Defendant.

- No evidence was presented regarding the hotel policies related to disturbances made by hotel guests.

- No evidence was presented regarding whether the Defendant had paid some[,] all[,] or none of the amount due for occupancy of the room.

- No evidence was presented regarding whether the Defendant had ever been contacted regarding the alleged disturbance caused by the Defendant.

The trial court's conclusions of law stated:

**Conclusions of Law**

- The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

- A search, conducted without a warrant, is per se unreasonable, subject to certain 'jealously and carefully drawn' exceptions. Georgia v. Randolph, 547 U.S. 103, 109, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

- The Fourth Amendment extends to hotel rooms. Moberg v. State, 810 S.W.2d 190, 194 (Tex. Crim. App. 1991).

- The rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of "apparent authority" such as a hotel clerk or manager. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

6

- A guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures and that this protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

- This Court further based its decision on the cases presented by counsel including Tilghman v. State, 576 S.W.3d 449, 454 (Tex. App.—Austin 2019, pet. granted) and Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

- Voekel v. State, 717 S.W.2d 314 (Tex. Cr. App. 1986), cited by the State, is distinguishable primarily because in *Voekel* the hotel manager had notified the occupant three times over a period of time that she would have to leave by 1:00 p.m. the next day, and she had not left by 3:00[]pm the next day. *Id.* at 315. Additionally, the hotel manager, not the police entered the room and told the occupant to leave. *Id.* Finally, the basis for the reduced expectation of privacy mentioned in the opinion was based upon the fact that the manager had told the occupant she would not be allowed to stay after 1:00 pm the following day. *Id.* None of these facts exist in the present case.

- At the time of law enforcement's entry into the room, no probable cause existed that Mr. Minatra had committed the crime of criminal trespass, as no notice had been given by any hotel personnel that Mr. Minatra's occupancy had or would be terminated. Nor was their probable cause that Mr. Minatra had committed the crimes of disturbing the peace, or interference with public duty.

- At the time of law enforcement's entry into Mr. Minatra's hotel room, Mr. Minatra still had occupancy rights.

- The term of occupancy for Mr. Minatra's hotel room had not yet expired at the time the police opened the door and forcefully made entry to Mr. Minatra's room.

- No probable cause existed that a crime was being committed.

- Without further proof, the hotel did not have the right to evict Mr. Minatra at the time officers forcefully entered Mr. Minatra's room.

- Mr. Minatra had a subjective and objective expectation of privacy in his hotel room and that expectation was reasonable.

7

- Mr. Minatra's expectation of privacy in the hotel room was not diminished nor extinguished at the time of the officer's forceful entry.

- Law enforcement violated Mr. Minatra's Fourth Amendment rights.

- Law enforcement's entry was not justified by any exception to the warrant requirement.

- The Defendant's Fourth Amendment rights were violated when the hotel manager gave the key to the officer for the room occupied by the Defendant, who then unlocked the door and attempted entry without a warrant.

- The entry was not justified by exigent circumstances or any other exception to the requirement of a warrant.

- The opening of the door to the room constituted a search and seizure prohibited by the Fourth Amendment.

- Defendant's term of occupancy had not expired at the time the door was opened.

- The Texas Legislature has not passed any statute relating to the eviction of hotel guests.

After the trial court filed its findings and conclusions, the Court of Criminal Appeals issued its opinion in *Tilghman* reversing our opinion and judgment and addressing when a person loses his reasonable expectation of privacy in a hotel room and may be evicted. *See* 624 S.W.3d at 807, 810-11.

## DISCUSSION

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Id.* at 806. We afford almost total deference to the trial court's determination of historical facts. *Id.* When a trial court makes express findings of fact, we must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are

8

supported by the record. *Id.* We then apply a de novo standard of review in determining the legal significance of those facts. *Id.*

**Fourth Amendment and right to privacy in hotel rooms**

The Fourth Amendment to the United States Constitution guarantees people the right "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Thus, subject to certain exceptions, law enforcement must obtain a search warrant before searching or seizing any place or thing in which a person has a reasonable expectation of privacy. *Tilghman*, 624 S.W.3d at 806 (citing *Kentucky v. King*, 563 U.S. 452, 459 (2011)). This privacy right has been extended to hotel guests in their rooms. *Id.* (citing *Stoner v. California*, 376 U.S. 483, 490 (1964)). However, hotel guests lose the expectation of privacy in their hotel room when their occupancy is scheduled to end or upon their eviction from the room by the hotel. *Id.* at 807. If hotel management needs assistance with carrying out a hotel guest's eviction (for example, based on expiration of the occupancy period or for a violation of hotel policies), police are allowed to assist with facilitating the eviction, and that is not considered a violation of the person's Fourth Amendment rights. *Id.*

**Hotel guests who violate hotel policies can lose reasonable expectation of privacy in rooms**

In response to the State's challenge to the suppression order, Minatra contends that he was not lawfully evicted from the hotel because: (1) his term of occupancy had not expired and he had not been evicted when police opened his door; (2) there was no evidence of the specifics of a hotel policy on evictions; (3) no notice of eviction was provided to him before police opened his door; and (4) there was no evidence that he was engaged in illegal activity when police arrived. Minatra points to the trial court's fact findings on who reported his

9

disruptive behavior to police, whether the hotel had policies about notice to and eviction of disruptive guests, who requested his eviction, whether a disturbance was ongoing or a crime had been committed when police approached his room and carried out his eviction, whether he was provided notice that his behavior was disruptive and that the hotel wanted him evicted, whether police ascertained the terms of the contract between him and the hotel, and whether he had paid any portion of the amount due for occupancy of the room. We apply a de novo standard of review to determine the legal significance of those facts. *Id.* at 806.

The Court of Criminal Appeals has stated that hotel guests lose the expectation of privacy in their hotel room upon their eviction from the room by the hotel and that hotel management may obtain police assistance in carrying out an eviction of a hotel guest for a violation of hotel policies without violating the hotel guest's Fourth Amendment rights. *See id.* Further, "[i]f a hotel decides to evict a guest for violation of a hotel policy, a person loses his reasonable expectation of privacy in a hotel room 'as soon as the hotel staff takes affirmative steps to repossess the room.'" *Id.*

**Hotel staff took affirmative steps to repossess Minatra's room and evict him**

Here, the hotel staff took affirmative steps to repossess Minatra's room and evict him by calling the police department, reporting to police the extent of Minatra's disruptive behavior and its effect on other guests, and providing a room key to assist with Minatra's eviction. Evidence from the suppression hearing showed that hotel staff called the police department about Minatra's disruptive behavior. Smith, the hotel desk clerk on duty until 11:00 p.m., testified that a hotel manager called police. Thus, the trial court's finding that

10

someone who was not staying at the hotel called police is not a legally significant fact. The trial court specifically found that "Debra Smith was a credible witness."

When police responded around midnight, the hotel staff provided further details about Minatra's disruptive behavior, drunken demeanor, and bothering the other guests. On Sergeant Meier's recording, a woman at the front desk reported that "the customer in 213," is "drunk," and is "disturbing his neighbors," and that "they've been calling." The recording also reflects that the hotel manager, Patel, identified Minatra as a hotel guest who drank too much, woke up other customers, and started "calling over here" and arguing. Patel further said that he moved four customers to other rooms because of Minatra's behavior. These descriptions of Minatra's behavior and appearance were consistent with Smith's testimony about seeing a "disrespectful" and "obnoxious" hotel guest who "had been drinking" and looked like Minatra. And although Smith denied knowing whether the hotel had a written policy on evictions, she testified that a hotel guest could be evicted if they are "bothering the other guests." Finally, the hotel staff provided a room key to police to assist with Minatra's eviction. Immediately after reporting that "the customer in 213" was "drunk" and "disturbing his neighbors," who proceeded to call the hotel staff, the woman at the front desk told Sergeant Meier unprompted, "This is the key." Patel subsequently confirmed that Minatra was in room 213 and that he wanted Minatra "kicked out" of the hotel, noting that he had already received multiple complaints.

Although Minatra contends that he could not have been lawfully evicted before his term of occupancy expired and without evidence proving the hotel's policy on evictions, notice of his eviction, and ongoing illegal activity, *Tilghman* shows otherwise. *See id.* at 810-11. In *Tilghman*, the Court determined that

11

[a] hotel has a right to evict a guest immediately, without actual notice, if the guest engages in behavior that violates the hotel's policies. And the hotel has the right to call the police for assistance with the eviction. To hold otherwise would potentially place hotel staff at risk of unreasonable harm by requiring them to attempt a physical eviction without police assistance. Although we recognize that hotel guests generally have an expectation of privacy in their hotel rooms, a guest who is engaging in behavior that he reasonably should know is in violation of hotel policy, even if that policy is not provided to him in writing, should also reasonably know that he may be evicted for engaging in such prohibited conduct once the hotel staff becomes aware of it. Such an individual can no longer contend that he maintains an objectively reasonable expectation of privacy in the room. (And this is particularly true where the prohibited conduct is of such a nature that hotel staff is very likely to discover it, such as the rowdy behavior at issue in *Molsbarger*[).]

*Id.*; *see United States v. Molsbarger*, 551 F.3d 809, 811 (8th Cir. 2009) ("Disruptive, unauthorized conduct in a hotel room invites intervention from management and termination of the rental agreement.").

Minatra reasonably should have known that his disruptive behavior, which was enough to cause multiple complaints from other hotel guests to hotel staff (who then relocated four guests), was in violation of hotel policy. "[A]n innkeeper has no duty to keep a guest indefinitely and has the right to evict a guest for any number of reasons." *Tilghman*, 624 S.W.3d at 807-08. Moreover, for the reasons discussed in the *Tilghman* excerpt above, the fact findings that Minatra points to—concerning whether the hotel had policies about notice to and eviction of disruptive guests, whether a disturbance was ongoing or a crime had been committed when police approached his room and carried out his eviction, whether he was provided notice that his behavior was disruptive and that the hotel wanted him evicted, whether police ascertained the terms of the contract between the hotel and him, and whether he had paid any portion of the amount due for occupancy of the room—are not legally significant facts. *See id.* at 806.

12

On this record, Minatra's expectation of privacy in his hotel room was extinguished by the hotel staff's taking affirmative steps to evict him. The hotel allowed the eviction of a guest for "bothering the other guests," and Minatra's "disruptive" and "obnoxious" behavior at the hotel after he had been drinking too much resulted in multiple guests' complaints to hotel staff. Control of room 213 reverted to the hotel upon the staff's taking affirmative steps to evict Minatra, who no longer had an expectation of privacy in the hotel room by the time of the police officers' entry. *See id.* at 811. Thus, that entry did not infringe upon Minatra's Fourth Amendment rights. *See id.* Because the police officers' entry to effectuate the hotel eviction did not violate Minatra's Fourth Amendment rights, *see id.* at 811-12, we conclude that the trial court abused its discretion by granting the motion to suppress evidence. We sustain the State's first issue.[5]

## CONCLUSION

We reverse the trial court's order granting Minatra's motion to suppress evidence and remand this cause for further proceedings consistent with this opinion.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Smith

Reversed and Remanded

Filed: June 2, 2022

Do Not Publish

---

[5] Because we have sustained the State's first issue, we need not address the State's alternative second issue. *See* Tex. R. App. P. 47.1.

13